HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division
JESUS A. OSETE
Principal Deputy Assistant Attorney General
R. JONAS GEISSLER
Deputy Assistant Attorney General
ANDREW M. DARLINGTON (FL No. 1018895)
Senior Counsel
WILLIAM J. HANRAHAN (PA No. 321600)
Trial Attorney, Special Litigation Section
   United States Department of Justice
   950 Pennsylvania Avenue, NW
   Washington, D.C. 20530
   Telephone:  (202) 550-5305
   E-Mail:    andrew.darlington@usdoj.gov

BILAL A. ESSAYLI
Acting United States Attorney
RICHARD M. PARK
Chief, Civil Rights Section
JULIE A. HAMILL (Cal. Bar No. 272742)
Assistant United States Attorney
   United States Attorney's Office
   300 North Los Angeles Street, Suite 7516
   Los Angeles, California 90012
   Telephone:  (213) 894-2464
   E-Mail:    Julie.hamill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cv-09323 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, and ROBERT LUNA, in his official capacity as Sheriff of Los Angeles County, | |
| Defendants. | |

Plaintiff, the United States of America, by and through its undersigned counsel, hereby brings this action against defendants Los Angeles County Sheriff's Department ("LASD") and Robert Luna, in his official capacity as Sheriff of Los Angeles County ("Defendant Luna") (collectively "Defendants"), and makes the following allegations:

**INTRODUCTION**

1. The Los Angeles County Sheriff's Department has systematically denied thousands of law-abiding Californians their fundamental Second Amendment right to bear arms outside the home—not through outright refusal, but through a deliberate pattern of unconscionable delay that renders this constitutional right meaningless in practice.

2. The scope of this constitutional violation is staggering. Between January 2024 and March 2025, Defendants received 3,982 applications for new concealed carry licenses. Of these, they approved exactly two—a mere 0.05% approval rate that cannot be explained by legitimate disqualifying factors alone. This is not bureaucratic inefficiency; it is systematic obstruction of constitutional rights.

3. The mechanics of this obstruction are equally damning. Defendants force applicants to wait an average of 281 days—over nine months—just to begin processing their applications, with some waiting as long as 1,030 days (nearly three years). The median delay is 372 days. These delays far exceed California's own statutory requirement that licensing authorities provide initial determinations within 90 days, demonstrating Defendants' flagrant disregard for both state law and constitutional obligations.

4. The human cost is profound. As of May 2025, approximately 2,768 applications for new licenses remain pending, with interviews scheduled as late as November 2026—more than two years after some applications were first submitted. Numerous applicants simply gave up and withdrew their applications, often after waiting months in Defendants' deliberately stalled process. These are not abstract statistics; they

represent thousands of law-abiding citizens who have been stripped of their constitutional right to self-defense outside their homes.

5. The Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1, 10 (2022), made clear that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Yet Defendants have constructed an administrative labyrinth designed to frustrate and ultimately deny this fundamental right to virtually all who seek to exercise it.

6. This case concerns more than administrative delays—it addresses a coordinated effort by Defendants to nullify through bureaucratic obstruction what they cannot deny through law. When constitutional rights are deliberately delayed beyond any reasonable timeframe, they are effectively denied. The United States brings this action under the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601, to restore the Second Amendment rights that Defendants have systematically violated and to ensure that law-abiding Californians can exercise their constitutional rights without facing years of unjustified delay.

## **PARTIES**

7. Plaintiff is the United States of America.

8. Defendant LASD is the Los Angeles County Sheriff's Department and the chief law enforcement agency responsible for Los Angeles County. Under the auspices of Defendant Luna, LASD is responsible for the issuance of a license to carry a concealed firearm to qualified applicants who reside or have a principal place of employment or business within the County of Los Angeles. *See* Cal. Penal Code § 26150(a).

9. Defendant Robert Luna is the Sheriff of Los Angeles County, and he has held that position since on or about December 3, 2022. In his capacity as the Sheriff of Los Angeles County, Defendant Luna is the responsible licensing official authorized and duty-bound under California law to issue a license to carry a concealed firearm to

qualified applicants who reside or have a principal place of employment or business within the County of Los Angeles. *See* Cal. Penal Code § 26150(a).

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

11. The United States is authorized to initiate this action against Defendants LASD and Sheriff Luna, in his official capacity, and seek equitable relief under the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601(b).

12. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2) because LASD is located in and carries out its operations primarily in the Central District of California, and the events or omissions giving rise to this claim, including the processing of applications for licenses to carry a concealed firearm, occurred within the Central District of California.

## REGULATORY BACKGROUND

13. In the State of California, "carrying a concealed firearm" is a crime unless one of several specific exemptions applies. *See* Cal. Penal Code § 25400(a), §§ 25450-25655.

14. Persons with a valid license to carry a concealed weapon issued under the licensing regime set forth in Cal. Penal Code §§ 26150-26235 are exempt from the general prohibition on "carrying a concealed firearm." Cal. Penal Code § 25655.

15. In his official capacity as Sheriff of Los Angeles County, Defendant Luna discharges his official duties individually and through the LASD deputies he appoints to assist him in the performance of those duties. *See* Cal. Gov't Code § 24100 ("Whenever the official name of any principal officer is used in any law conferring power or imposing duties or liabilities, it includes deputies.").

16. County sheriffs in California, including Defendant Luna, are licensing authorities with the duty to issue a license to carry a concealed firearm to qualified applicants. Cal. Penal Code § 26150(a). Therefore, Sheriff Luna's official duties include

accepting applications from, and issuing licenses to carry a concealed firearm to, individuals who reside in or have their principal place of employment or business in Los Angeles County and who satisfy applicable statutory eligibility requirements. *Id.*

17. A California license to carry a concealed firearm is valid for no more than two years from the date of issuance, subject to several exceptions. Cal. Penal Code § 26220.

18. Under California law, licensing authorities must do the following:

> "[D]etermine whether an applicant [for a license to carry a concealed firearm] is a disqualified person [who] cannot receive or renew a license" by "conduct[ing] an investigation that meets" several requirements, including "[a]n in-person interview with the applicant" for new applicants. Cal. Penal Code § 26202(b)(1);

> "Within 90 days of receiving the completed application for a new license … give written notice to the applicant of the licensing authority's initial determination … of whether an applicant is a disqualified person…." Cal. Penal Code § 26202(d). If the licensing authority determines that "the applicant is not a disqualified person," it must "inform the applicant to proceed with the training requirements…" and "then submit the applicant's fingerprints … to the [California] Department of Justice," which must then must "promptly furnish the forwarding licensing authority information as to whether the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm." Cal. Penal Code § 26202(d)(1), § 26185(a)(1); and

> "[G]ive written notice to the applicant indicating if the license is approved or denied … within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the [California] Department of Justice…, whichever is later." Cal. Penal Code § 26205(a). *See also* § 26185(a)(2). With respect to applications for a renewal license to carry a concealed firearm, licensing authorities are required to "give this notice within 120 days of receiving the completed application for a license renewal." Cal. Penal Code § 26205(a).

19. By letter dated March 27, 2025, the United States Department of Justice (the "Department") notified Defendant Sheriff Luna that it was opening an investigation into LASD under 34 U.S.C. § 12601(a) based on information the Department received suggesting that LASD "may be engaged in certain practices that unduly burden, or effectively deny, the Second Amendment rights of ordinary, law-abiding citizens, including … lengthy wait times in processing applications for concealed handgun licenses."

20. During the investigation, LASD, through its counsel, provided information and documents to the Department responsive to the Department's requests. That information included data for approximately 8,427 applications for a license to carry a concealed firearm (including approximately 3,982 new and 4,265 renewal applications) that LASD received from January 2, 2024, to March 31, 2025. For each application, this data included the dates that each completed step was completed through May 8, 2025.

21. Based on information provided by LASD, through its counsel, the first step in the concealed firearm application process is to receive a completed application. The next step LASD performed was either to schedule an interview of the applicant or any other step as required under California law (collectively "Next Step").

## FACTUAL ALLEGATIONS[1]

22. LASD received approximately 3,982 applications for a new license to carry a concealed firearm and approximately 4,265 applications for a renewal license to carry a concealed firearm during the period of January 2, 2024, to March 31, 2025.

23. As of May 8, 2025, of those 3,982 applications for a new license to carry a concealed firearm, LASD issued only two licenses and denied two licenses during the subject period. As of May 8, 2025, approximately 2,768 applications for a new license to carry a concealed firearm remained pending, and the remaining 1,210 applications were withdrawn for various reasons, often after sitting with Defendants for many months.

---

[1] The Factual Allegations in this Complaint are based on information that LASD provided to the Department.

24. For the approximately 2,768 pending applications for a new license to carry a concealed firearm, interviews are already scheduled for as late as November 2026—more than two years after some applications were first filed.

25. The median number of days LASD took to advance an application to the Next Step (either scheduling an interview or otherwise advancing the application as required by California law) was 372 days from LASD receiving an application, and the mean delay was 281 days.

26. The maximum number of days recorded between LASD's receipt of an application for a new license to carry a concealed firearm and the date another step in the application process occurred or, in the case of interviews scheduled for future dates, will occur, is approximately 1,030 days.

## COUNT I

**(Violation of 34 U.S.C. § 12601)**

27. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1-26 above.

28. The United States is authorized under 34 U.S.C. § 12601 to seek declaratory and equitable relief to eliminate a pattern or practice of law enforcement officer conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

29. The Second Amendment of the United States Constitution generally protects the right of law-abiding individuals to keep and bear arms, both within their homes and outside of their homes for lawful purposes. The Second Amendment applies to the States and their political subdivisions by its incorporation through the Fourteenth Amendment's Due Process Clause. *See McDonald v. City of Chicago*, 561 U.S. 742 (2010).

30. Law-abiding citizens carrying a concealed weapon with a license is conduct protected by the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

31. California state law expressly requires Defendants to provide concealed carry applicants with an initial approval or denial for a new license within 90 days. Cal. Penal Code § 26202(d).

32. Defendants are governmental authorities subject to the prohibition in 34 U.S.C. § 12601(a), and the deputies in their employ are law enforcement officers who act on Defendants' behalf in the discharge of their duties, including the duty to process applications for a license to carry a concealed firearm that, at least under California law, is necessary for law-abiding individuals in California to exercise their constitutional right to bear arms outside of their homes.

33. Defendants' systematic practice of delaying the processing of concealed carry weapon permit applications has deprived, and continues to deprive, thousands of law-abiding individuals who applied for a new license to carry a concealed firearm of their Second Amendment rights as incorporated by the Fourteenth Amendment by

    a. Denying applicants a prompt determination of their applications within a reasonable time;

    b. Failing to provide applicants with meaningful notice of the status of their applications or reasons for delays; and

    c. Effectively forcing applicants to abandon their constitutional rights through administrative exhaustion.

34. Accordingly, Defendants have engaged, and continue to engage, in a pattern or practice of conduct by law enforcement officers that deprives people of rights secured and protected by the Constitution, in violation of 34 U.S.C. § 12601(a).

35. Unless enjoined by this Court, Defendants continue to engage in the pattern or practice of the conduct described above, which deprives law-abiding individuals of their constitutional right to bear arms outside of their homes in California.

**PRAYER FOR RELIEF**

36. WHEREFORE, the United States hereby prays that the Court grant the following relief:

a. A declaration that Defendants' pattern and practice of subjecting law-abiding applicants for concealed carry weapon permits to excessive delays violates the Second Amendment as incorporated by the Fourteenth Amendment;

b. A declaration that Defendants' pattern and practice of approving virtually no new concealed carry weapon permit applications submitted by law-abiding applicants violates the Second Amendment as incorporated by the Fourteenth Amendment;

c. A permanent injunction prohibiting Defendants from implementing California law and regulations governing the issuance of concealed carry licenses, including, but not limited to, Cal. Penal Code §§ 26150-26235, in a manner that violates the Second Amendment as incorporated by the Fourteenth Amendment and 34 U.S.C. § 12601, as alleged herein;

d. An award of all such additional relief as the interests of justice may require.

DATED: September 30, 2025.

BILAL A. ESSAYLI
Acting United States Attorney
RICHARD M. PARK
Chief, Civil Rights Section

/s/ Julie A. Hamill
_____
JULIE A. HAMILL
Assistant United States Attorney
Civil Rights Section

Respectfully submitted:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General

R. JONAS GEISSLER
Deputy Assistant Attorney General

/s/ Andrew M. Darlington
_____
ANDREW M. DARLINGTON
Senior Counsel

WILLIAM J. HANRAHAN
Trial Attorney, Special Litigation Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA